UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**PAMELA D. FERRILL,**
                **Plaintiff,**

v.                                                   **Case No. 13-cv-0858**

**OAK CREEK-FRANKLIN JOINT
SCHOOL DISTRICT et al.,**
                **Defendants.**
_____

## DECISION AND ORDER

Plaintiff Pamela Ferrill sues the Oak Creek-Franklin Joint School District ("the District") and its Board of Education ("the Board") alleging discrimination and retaliation in violation of Title VII, discrimination in violation of § 1981, and, pursuant to § 1983, a violation of the First Amendment. Before me now is defendants' motion for summary judgment.

### I. Background

In 2008, District Superintendent Sara Burmeister hired plaintiff, an African American, as principal of the Edgewood Elementary School. Edgewood teachers soon began complaining about plaintiff to Burmeister and other administrators. During the 2008-2009 and 2009-2010 school years, Burmeister and other administrators met with plaintiff several times about the issues raised in the complaints. Burmeister also hired two consultants to work with plaintiff on improving her management skills, but both advised Burmeister that plaintiff was unwilling to engage in this enterprise. In December 2009, Burmeister implemented a formal action plan for plaintiff based on a set of previously established informal goals and objectives. On January 11, 2010, the Board decided not to roll over

plaintiff's contract beyond the 2010-2011 school year.[1]

Plaintiff asserts that during her two years at Edgewood she expressed concerns to Burmeister about the cultural insensitivity of the teachers, students, and parents at Edgewood and about the treatment of herself and African American students. After the Board decided not to roll over her contract in January 2010, plaintiff wrote a letter to Board members about her treatment. Subsequently, the Board placed plaintiff on paid administrative leave. In August 2010, plaintiff accepted a position with another district, and defendants interpreted this as a resignation and accepted it.

## II. Discussion

I may grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). I draw all inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A. Race Discrimination Claims**

Plaintiff first alleges that when defendants did not roll over her contract they discriminated against her on account of race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Section 1981 prohibits race discrimination in the making and enforcing of employment contracts. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).[2] Plaintiff does not claim direct evidence of discrimination but argues that

---

[1] Plaintiff's employment contract was for two years and provided for an automatic extension or rollover for an additional year unless the Board decided otherwise. *See* Wistrom Decl. Ex. 5 (ECF No. 30-5).

[2] Discrimination claims under Title VII and § 1981 are analyzed identically. *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).

2

there is sufficient indirect evidence to survive summary judgment. Under the indirect method of proof, plaintiff first must establish a prima facie case of discrimination. *E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 148 (7th Cir. 1996). To do so, she must show "'(1) that [s]he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive.'" *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169–70 (7th Cir. 1998) (quoting *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1038 (10th Cir. 1993)). Typically, the third prong is satisfied by showing membership in a protected class and that a similarly situated individual who was not in the protected class was treated more favorably. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

If plaintiff does this, the burden shifts to defendants to show a legitimate, non-discriminatory reason for their actions. *Our Lady of Resurrection*, 77 F.3d at 149. The burden then shifts to plaintiff to show that defendants' stated reason is pretextual. *Id.* In cases like this, where defendants' stated reason for the adverse employment action is that plaintiff's job performance was unsatisfactory, this analysis is collapsed. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010).

Defendants argue that plaintiff was not meeting legitimate job expectations and that she therefore cannot make a prima facie case of discrimination or show that their stated reason for not rolling over her contract, namely her poor job performance, was pretextual. Defendants note that district administration was made aware of potential problems with

3

plaintiff's job performance in the fall of 2008 by complaints from teachers,[3] at which point Burmeister began more closely monitoring plaintiff. As evidence of her poor performance, defendants point to a performance evaluation from plaintiff's first year, stating that plaintiff "need[s] to work on building trust and positive working relationships" and "to avoid contributing to conflict in the building by creating dissention at times among staff," Wistrom Decl. Ex. 8 (ECF No. 30-8); declarations from Burmeister, other district administrators and Edgewood teachers attesting to specific instances of plaintiff's poor performance; a report from a consulting firm that worked with plaintiff on developing leadership skills stating that plaintiff "exhibited extremely poor leadership skills" and that the only way "to provide positive solutions to the struggles of Edgewood . . . was to remove [plaintiff] from the Principal position," Heidepriem Decl. Ex. D (ECF No. 25-4); and a report from a mentor hired to work with plaintiff stating that plaintiff "does not want feedback on her performance unless it is to reaffirm that what she has already done is right," Ewald Decl. Ex. D (ECF No. 26-4).

In response, plaintiff points to other evidence including her own testimony suggesting other explanations for some of her conflicts, her performance evaluation listing several strengths; and her receipt of a 3% raise after the 2008-2009 school year. This

---

[3] Plaintiff argues these complaints (as well as the results of an anonymous teacher survey) are inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(2) (allowing plaintiff to object to "material cited [in a summary judgment motion] to support or dispute a fact [that] cannot be presented in a form that would be admissible in evidence"). However, to the extent that the information goes to Burmeister's state of mind at the time she was evaluating plaintiff's performance, it is not offered to prove the truth of the matter asserted and therefore is not hearsay. Fed. R. Evid. 801(c) (defining hearsay as "a statement that a party offers in evidence to prove the truth of the matter asserted in that statement"); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715–16 (7th Cir. 2004).

evidence, however, is insufficient to create a genuine issue of material fact. That plaintiff's performance evaluation indicates that she performed some tasks satisfactorily does not negate its assessment that in some areas she was not meeting minimum expectations. Also, the raise plaintiff received after her first year was not merit-based but part of an increase given to a group of administrators resulting from retirements and resignations. Burmeister Supp. Decl. at 2 (ECF No. 41). While plaintiff offers different versions of the events described in defendants' numerous declarations, no reasonable juror could find that plaintiff was meeting minimum job expectations given the number of administrators, teachers, and mentors stating otherwise; the negative evaluations from leadership consultants and school administrators; the consistency among all other accounts of her job performance; and the lack of any contrary evidence aside from plaintiff's testimony. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating a plaintiff must do more than "simply show that there is some metaphysical doubt as to the material facts"); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) ("A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."); *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) ("[A] non-moving party can[not] survive summary judgment with merely a scintilla of evidence supporting its position.").

Nor has plaintiff presented any evidence indicating that defendants' decision not to roll over her contract was pretextual and was in fact motivated by her race. "Pretext is more than a mistake on the part of an employer; it is a phony excuse," *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004), which plaintiff can establish "with evidence that

5

the defendants were more likely than not motivated by a discriminatory reason or that their explanations are not worthy of credence, i.e., they are factually baseless, did not actually motivate defendants, or were insufficient to motivate the adverse employment action." *O'Neal v. City of Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). Plaintiff's submissions do not indicate that defendants' decision was motivated by race discrimination or that defendants' explanation is not worthy of credence. Plaintiff cites evidence that the school staff was difficult to manage before she became principal, but this seems to be more of an excuse for poor performance than an indication that defendants' actions were not motivated by her poor performance. Plaintiff also cites Burmeister's reaction to her January 2010 letter to Board members which discussed race issues, but this seems irrelevant because the letter was sent after the Board took the adverse action complained of, not rolling over plaintiff's contract.

Plaintiff also points to an investigation of certain racial issues which, because it took place after the decision she objects to, is of questionable relevance. Plaintiff, however, argues that its cursory nature suggests that it was merely an attempt to justify the Board's decision. However, nothing about the investigation suggests that defendants did not honestly believe plaintiff was performing poorly. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145–46 (7th Cir. 1994) ("[If defendant] consults with only a few key people and concludes that [plaintiff] must be fired, that is enough.").

Finally, plaintiff points to the treatment of a white administrator, Sheila Momberg, who was put on an action plan but did not immediately suffer the same adverse employment action as plaintiff. Like plaintiff, Momberg was provided with resources to

6

improve her job performance and put on an action plan and when she failed to improve her performance the Board declined to roll over her contract. Momberg, however, initially improved her performance and the Board did not decide not to roll over her contract until her performance fell off again. This slight difference between plaintiff's and Momberg's situations does not suggest any disparate treatment based on race.

In the face of all of the evidence of plaintiff's unsatisfactory performance, plaintiff's evidence is insufficient to enable a reasonable juror to conclude that plaintiff was meeting legitimate job expectations or that race rather than poor performance was the motivating factor behind defendants' decision not to roll over her contract.[4] Thus, I will grant summary judgment in favor of defendants on plaintiff's discrimination claims.

**B. Title VII Retaliation Claim**

Plaintiff also alleges that defendants retaliated against her for opposing race discrimination. To establish her retaliation claim, plaintiff must "show[] that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; (3) a causal connection exists between the two." *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).[5] Plaintiff may prevail on her retaliation claim despite failing on her discrimination claim. *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). Plaintiff contends that she complained to Burmeister about racial issues at Edgewood several times

---

[4] Defendants also argue that the decision not to roll over plaintiff's contract was not an adverse employment action under Title VII's discrimination provision. I need not address this issue because plaintiff cannot prevail on her discrimination claims.

[5] Plaintiff does not attempt to establish her retaliation claim under the indirect method of proof outlined in *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).

7

and when her complaints were not taken seriously, she wrote her January 2010 letter to the Board.

In order to engage in statutorily protected activity, plaintiff must show that she "took some step in opposition to a form of discrimination that [Title VII] prohibits," and that she complained about conduct that a reasonable person, hearing the complaint, would have believed amounted to an unlawful employment practice. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631–32 (7th Cir. 2011) (citing *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004)). Plaintiff asserts that she first raised the issue of race at a November 2009 meeting with Burmeister. She states that she advised Burmeister that several teachers responded negatively to her handling of situations, and that these responses were racially motivated. In December 2009, plaintiff followed up this conversation with a letter[6] stating that at the November meeting she shared "what it was like for [her] to be the only African American employee K-8" and discussed her "previous concerns regarding the racial issues that [she] has had to endure since [she] ha[s] been in the Oak Creek-Franklin School District." Good Decl. Ex. R at 1–2 (ECF No. 35-18). Burmeister disputes plaintiff's version of these events stating that racial issues were not discussed; this is a fact issue which I cannot resolve on summary judgment. Taking all inferences in favor of plaintiff, I conclude that a reasonable juror could believe that plaintiff opposed hostile treatment based on her race, and that the incidents she complained of involving three separate teachers as well as her request for "support to address racial matters and to assist [her]

---

[6] The parties dispute when this letter was delivered. However, even if it was delivered in January 2010 instead of December 2009, it remains relevant because it was delivered prior to at least some of the adverse actions of which plaintiff complains and because it memorializes plaintiff's account of the November 2009 meeting.

8

in building a more culturally sensitive environment," *id.*, were enough to lead a reasonable listener to believe there was a problem.

Plaintiff also contends that her January 2010 letter to Board members is statutorily protected because in it she complained about Burmeister's handling of the racial issues plaintiff had raised, stating that she "extensively spoke with Dr. Burmeister about . . . numerous racial issues" and that those issues "were continually dismissed or invalidated." Wistrom Decl. Ex. 29 (ECF No. 30-29). She also attached to the letter correspondence between her and Burmeister, including the December 2009 letter discussed above. The complaints in the January 2010 letter were substantively similar to those previously made to Burmeister with the added concern that Burmeister was not addressing the issues. A reasonable juror could conclude that this was statutorily protected activity.[7]

Plaintiff alleges that defendants took two adverse employment actions against her in retaliation for her complaints about racial issues: the decision not to roll over her contract and the decision to place her on paid administrative leave pending the investigation of the issues raised in her January 2010 letter. "The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014). "The scope of the antiretaliation provision [of Title VII] extends beyond workplace-related and

---

[7] Plaintiff's letter also referred to complaints to Burmeister about racial issues that African American students were facing at Edgewood. These complaints are not statutorily protected because they do not relate to employment-related discrimination. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631–32 (7th Cir. 2011) (stating that plaintiff must have complained about a practice which violates Title VII); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006) (noting that "Title VII's substantive antidiscrimination provision protects an individual only from employment-related discrimination").

9

employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Thus, "a plaintiff must show only that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib*, 744 F.3d at 996–87.

Contract non-renewal is an adverse employment action. *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009). Defendants argue, however, that a non-rollover of plaintiff's contract is different. *Compare,* Wis. Stat. § 118.24 (defining the statutory non-renewal process), *with* Wistrom Decl. Ex. 5 (ECF No. 30-5) (plaintiff's employment contract providing for an automatic one-year extension, or rollover, of the contract unless the Board decides otherwise). However, a reasonable juror could conclude that the Board's action, which negatively impacted plaintiff's position, would deter a reasonable worker from making similar complaints.

Defendants also argue the absence of a causal connection between plaintiff's previous complaints and their decision not to roll over her contract. "Title VII retaliation claims must be proved according to traditional principals of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). To show a causal link, plaintiff "must do more than merely point to the temporal link; rather, the plaintiff must put forth other evidence that suggests that the protected activities were related to the employer's decision." *Hall v. Forest River, Inc.*, 536 F.3d 615, 622 (7th Cir. 2008). Plaintiff argues that Burmeister's performance concerns only arose after the November 2009 complaints. She also contends that the 2010 staff survey and investigation were after-the-fact justifications for the Board's decision not to roll over her contract. As discussed, however, the District

10

was documenting concerns about plaintiff's job performance before her November 2009 complaints and addressing such concerns with plaintiff. *See, e.g.*, Ferrill Decl. at 4 (ECF No. 36) (recounting a November 2008 meeting in which Burmeister addressed staff complaints with plaintiff); Burmeister Decl. at 2 (ECF No. 27) (same). Further, the Board did not attempt to use the staff survey and investigation to justify the rollover decision after-the-fact. Even when viewed in a light most favorable to plaintiff, what plaintiff describes as "cascading negative treatment" appears to be nothing more than escalating attempts to address her performance deficiencies. Thus, taken in the light most favorable to plaintiff, the evidence indicates that defendants' decision not to roll over plaintiff's contract was motivated by poor job performance and not a wish for retaliation. Thus, plaintiff may not proceed with a retaliation claim based on the decision not to roll over her contract.

Paid administrative leave, the second alleged adverse employment action, does not constitute an adverse employment action even in retaliation claims. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 786–87 (7th Cir. 2007). However, in the present case defendants did more than simply place plaintiff on paid administrative leave; they surrounded this action with a number of others. They notified the police that plaintiff was not welcome on school grounds; requested an extra police patrol in case she tried to enter the building, Good Decl. Ex. U (ECF No. 35-21); and sent letters to other District administrators, Edgewood teachers, and Edgewood parents indicating that plaintiff "was placed on an indefinite leave of absence pending an investigation into conduct which might be detrimental to the interests of the school district," Good Decl. Exs. S, T, V (ECF Nos. 35-19, 35-20, 35-22). This led to community speculation, including a call from a local TV

11

news reporter, that plaintiff had been "removed from the school in handcuffs by the police." Good Decl. Ex. W (ECF No. 35-23). A reasonable juror could conclude that these combined actions, which had the potential to damage plaintiff's reputation, would be enough to deter a reasonable worker from making a similar complaint and thus were adverse. Defendants concede that plaintiff's January 2010 letter to the school board was a motivating factor in its decision to place plaintiff on administrative leave. Thus, a reasonable juror could conclude that the January 2010 letter constituted protected activity and that defendants' actions surrounding their decision to place plaintiff on administrative leave constituted an adverse action. Therefore, plaintiff's retaliation claim based on the circumstances surrounding her being placed on leave may proceed.

**C. First Amendment Retaliation Claim**

Plaintiff also alleges that defendants violated § 1983 by retaliating against her by placing her on paid administrative leave for exercising her First Amendment rights. To establish a First Amendment retaliation claim, plaintiff must show that: "(1) [her] speech was constitutionally protected, (2) [s]he has suffered a deprivation likely to deter speech, and (3) [her] speech was at least a motivating factor in the employer's action. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). "For a public employee's speech to be protected under the First Amendment, the employee must show that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Id.* (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). These are questions of law. *Volkman v.*

*Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013).

Although public employees enjoy First Amendment protection for speech they make as private citizens, the First Amendment does not insulate them from employer discipline when they are speaking "pursuant to their official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). However, "speech that simply relates to public employment or concerns information learned in the course of public employment . . . does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014) (noting that "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment"). "The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id.*

Here, the speech at issue is the January 2010 letter plaintiff wrote to Board members. While the letter concerns information she obtained as principal, communicating directly with Board members was not part of plaintiff's official duties; in fact, defendants assert that such direct communication violated District policy. Further, plaintiff's letter voiced concern about issues she observed through her employment at Edgewood, more like what courts have treated as citizen speech rather than employee speech. *Compare Lane*, 134 S. Ct. 2369 (administrator who testified under oath was protected under First Amendment); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968) (teacher who wrote to local newspaper criticizing school board was protected under First Amendment), *with Garcetti*, 547 U.S. 410 (prosecutor who prepared an internal memorandum related to a case was not protected under First Amendment). Thus, I

13

conclude that plaintiff's speech was made as a citizen.

To be protected, plaintiff's speech must also have been on a matter of public concern. In determining whether public speech is of public concern, I look to the content, form, and context of the speech, and "if the objective of the speech . . . is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern." *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013). "But if the objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern." *Id.* Here, I conclude that the content, form, and context of the letter indicate more than a purely personal objective. While the letter addressed some personal issues, it also addressed concerns that plaintiff "and students of color endured numerous racial issues and attacks" and the District's failure to address the issues and expressed plaintiff's desire to "prevent someone else from receiving" the same treatment in the future. Wistrom Decl. Ex. 29 (ECF No. 30-29). Race discrimination is a matter of public concern, and the context of plaintiff's previous complaints to Burmeister about racial issues with teachers, students, and parents support the conclusion that the objective of the speech was more than personal. Thus, I conclude that plaintiff's speech was on a matter of public concern.

The last step in determining whether the speech is protected requires me to balance the interests on both sides, keeping in mind that on the one hand, "government employers . . . need a significant degree of control over their employees' words and actions," and on the other hand that "a citizen who works for the government is nonetheless a citizen." *Garcetti*, 547 U.S. at 418–19. In balancing the parties' interests, I consider the following

14

factors: "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public." *Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000). In considering these factors, I may consider "the potential disruptiveness" of the speech. *Kokkinis v. Ivkovich*, 185 F.3d 840, 845 (7th Cir. 1999).

Defendants argue that plaintiff's letter was insubordinate, directly challenged Burmeister's authority, and violated district policy by going over her head. *See Domiano v. Vill. of River Grove*, 904 F.2d 1142, 1145 (7th Cir. 1990) ("The first amendment . . . is not a license for insubordinate speech that impedes an employee's performance of his duties or interferes with the proper functioning of the workplace."). They also argue that by sending the letter directly to the Board, plaintiff potentially tainted the Board's impartiality if it had to vote on the non-renewal of plaintiff's contract. However, neither of these arguments is persuasive. Although District policy states that "[p]ersonnel shall be expected to refer matters requiring administrative action to the administrator to whom they are responsible," it also states that "all personnel shall have the right to appeal any decision made by an administrative officer to the next higher administrative authority." Burmeister Decl. Ex. A (ECF No. 27-1). Thus, it is unclear whether plaintiff's letter violated policy. Further, because plaintiff's letter was written as a private citizen and not an employee, District policy cannot prohibit it. It is also unclear how plaintiff's letter, which was written to

15

Board members and not made public, threatened to disrupt District administration or impede plaintiff's ability to do her job. Defendants emphasize the need to keep the Board neutral in the event of a non-renewal hearing, but the Board had not given notice that it intended to renew plaintiff's contract. Thus, this concern seems speculative. Therefore, I conclude that the factors weigh in favor of plaintiff's interests and that her speech is thus protected under the First Amendment.

Defendants also argue that in the context of plaintiff's § 1983/First Amendment claim, the decision to place plaintiff on paid administrative leave, was not adverse. I have already concluded that a reasonable juror could find that the decision to place plaintiff on leave, combined with defendants' other actions surrounding that decision, constituted an adverse employment action for purposes of plaintiff's Title VII retaliation claim, and for the same reasons I reach the same conclusion with respect to plaintiff's § 1983 claim. And defendants have conceded that the letter was a motivating factor in their decision to place plaintiff on paid administrative leave. Thus, I will deny summary judgment on this claim.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 17) is **GRANTED in part** and **DENIED in part**.

Summary judgment is **GRANTED** as to plaintiff's Title VII and § 1981 discrimination claims.

Summary judgment is **GRANTED in part** and **DENIED in part** as to plaintiff's Title VII retaliation claim.

Summary judgment is **DENIED** as to plaintiff's § 1983 First Amendment retaliation

16

claim.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2015.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge